## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **09-05670-hb**
Adversary Proceeding Number:  **10-80162-hb**

## ORDER

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**04/04/2012**



US Bankruptcy Judge
District of South Carolina

Entered: 04/04/2012

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Patricia Susan Pfister,<br><br>Debtor(s).<br><br>Robert F. Anderson, Trustee,<br><br>Plaintiff(s),<br><br>v.<br><br>Architectural Glass Construction, Inc.,<br><br>Defendant(s). | C/A No. 09-05670-HB<br><br>Adv. Pro. No. 10-80162-HB<br><br>Chapter 7<br><br>**ORDER** |

Plaintiff Robert F. Anderson, Chapter 7 Trustee, seeks to avoid a transfer of property made by Debtor Patricia Susan Pfister to Defendant Architectural Glass Construction, Inc.[1] Trustee asserts that the transfer is fraudulent and avoidable and that he is entitled to judgment in his favor pursuant to all or a combination of the following: 11 U.S.C. § 548(a)(1)(A) and (B) (2010),[2] § 544(b), § 550(a), S.C. Code Ann. § 27-23-10 (Supp. 2010) ("Statute of Elizabeth"), and the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. § 3304(a) and (b)(1)(B) (2010).

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and Local Civil Rule 83.IX.01, DSC. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (H). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The trial was held on February 14-15, 2012. Post-Trial Briefs were filed thereafter. (Doc. Nos. 88 & 89, filed on Mar. 12, 2012).

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, will be by section number only.

The Court makes the following findings of fact and conclusions of law pursuant to

Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

1.      Defendant is in the business of designing and constructing glass structures

(i.e., sunrooms, greenhouses, etc.).  Debtor is a residential real estate agent.  Her husband,

Phillip W. Pfister ("Pfister"), is the sole owner and operator of Defendant.  Debtor is not and

has never been directly involved with or employed by Defendant; however, Debtor's son

was employed by Defendant for several years and Pfister derives income from Defendant.

2.      On May 10, 2001, Debtor and Pfister purchased undeveloped real property

located at 3098 Highway 101 South, Greer, South Carolina ("Property") for approximately

$74,000.  The deed was properly recorded in Spartanburg County on June 13, 2001, in Book

732, Page 725.

3.      The purchase of the Property was financed entirely by a loan from BB&T.

The loan was secured by a mortgage on the Property executed by Debtor and Pfister.  The

mortgage was properly recorded in on June 13, 2001, in Book 2504, Page 213.

4.      Based on the advice of their accountant, the Property was titled and owned in

Debtor's and Pfister's individual names.  Pfister testified that he and Debtor were advised

that Defendant could pay rent for use of the Property and Debtor and Pfister could receive

tax advantages from this arrangement.

5.      Thereafter, two buildings were erected on the Property: a warehouse; and a

second warehouse with a showroom.  The construction was financed by various local banks

with  loans  made  in  Defendant's  name.    These  loans  were  secured  by  mortgages

2

encumbering the Property executed by Debtor and Pfister.  Each new mortgage would pay off the prior mortgage.[3]

6.      On October 22, 2004, Defendant executed a promissory note for $355,000 in favor of Greer State Bank, secured by a mortgage on the Property executed by Debtor and Pfister ("First Mortgage).

7.      Although the Property and its buildings were used by Defendant, rental payments were never made to Debtor or Pfister as originally contemplated.  Instead, Defendant made all the mortgage payments and covered expenses from funds in its bank accounts.

8.      In 2008, Defendant opened an additional business location in Wichita, Kansas.  During late 2008 and early 2009, Pfister spent most of his time at the Wichita office while his son operated Defendant's South Carolina office.  In December 2008, Pfister approached Greer State Bank regarding a loan related to the Wichita expansion.  On December 28, 2008, the bank agreed to loan $87,000, and Defendant executed a note in that amount on December 31, 2008.  This note was to be secured by the Property, and was an amount loaned in addition to any outstanding balance encumbering the Property at that time.

9.      Also on December 31, 2008, Debtor and Pfister executed a deed transferring the Property to Defendant ("Transfer").  The deed was properly recorded on January 13, 2009, and states that the consideration paid by Defendant to Debtor and Pfister for the Property was ten dollars ($10.00).  There was no evidence of any additional amounts paid by Defendant to Debtor and Pfister at that time.

---

[3] Overall, the debt on the Property decreased from $75,000 to $57,000, then increased to $168,000 to build the first building, increased again to $223,500 to build the second building, and finally increased to $355,000 to finish the second building. *See* Def.'s Exs. F-K.

10.     The evidence indicated that the Transfer was made because Greer State Bank made an error in the loan documents by placing Defendant's name on a mortgage securing the $87,000 note—not the names of the owners, Debtor and Pfister.  Debtor and Pfister testified that they were advised that the easiest way to alleviate this problem and complete the loan transaction was to transfer title of the Property to Defendant.  Thereafter, Debtor and Pfister voluntarily transferred their interests to Defendant so that Defendant could receive the loan.  Execution of the relevant documents was somewhat pressing because Pfister was leaving for Defendant's Wichita office and would be staying there for an extended period of time.

11.     Three employees of Greer State Bank testified that the Transfer was made to quickly correct the bank's error and as a last-minute fix and condition of closing the loan. After considering the testimony of the witnesses, and accounting for their demeanor and any bias or interest in this matter, the Court finds as a fact that the Transfer was made by Debtor for reasons other than to intentionally hinder, delay, or defraud her creditors.

12.     Debtor filed a voluntary petition for Chapter 7 relief on July 31, 2009.[4]

13.     Debtor's bankruptcy schedules and statements included the following information:

> Debtor transferred her ½ interest in the property located at 3098 Hwy 101 South, Greer SC 29651 to Arcitectural [sic] Glass Construction, Inc.  At the time of the transfer the property was valued at approximately $540,000 and had first and second mortgages totalling [sic] approximately $391,000.[5]

Debtor's Amended SOFA corrected the information about the mortgages encumbering the Property at the time of the Transfer by decreasing the amount to $304,000.[6]

---

[4] Doc. No. 1, C/A No. 09-05670-HB.
[5] Pl.'s Ex. 5 at 43.
[6] *Id.* at Ex. 6 at 7 (filed on Aug. 27, 2009).

14.     Appraiser, R. Bruce Owen, valued the Property at $470,000 less than a month before the Transfer,[7] at $420,000 as of August 3, 2010, and then at $297,500 as of August 18, 2011.

15.     From the evidence, the Court concludes that there was significant equity in Debtor's interest in the Property at the time of the Transfer.

16.     Debtor was having significant financial difficulties in late 2008 and early 2009, and was unable to pay obligations when due and/or became insolvent as a result of the Transfer.   Many of her financial problems arose from her involvement with a business owned by her daughter.  Debtor guaranteed the lease obligations for that business as well as a working capital loan in 2006.   However, the business failed and Debtor's daughter filed a voluntary petition for Chapter 7 relief on April 17, 2009.[8]  Because the payments on these obligations became delinquent, the creditors initiated pre-petition lawsuits in state court to collect on their debts and then filed proofs of claim in Debtor's bankruptcy case.[9]

17.     When the bankruptcy was filed, Debtor owed various creditors that she was indebted to at the time of the Transfer, including the Internal Revenue Service ("IRS") for 2002, 2006 and 2007 taxes.[10]  Debtor's schedules indicate that at the time of her bankruptcy

---

[7] *Id.* at Ex. 3 (appraisal as of Dec. 5, 2008).

[8] *See* C/A No. 09-02916-HB.

[9] *See* Pl.'s Exs. 5, 9, 14 (landlord creditor listed on Debtor's Schedule F as holding a claim in the amount of $78,473; Proof of Claim No. 6 in the amount of $122,873.31, for rent due for August 2008 and all the months thereafter; and a state court lawsuit initiated against Debtor and the business on Mar. 18, 2009); *id.* at Ex. 5 & 17 (landlord creditor listed on Debtor's Schedule F as holding a claim in the amount of $33,600, for a terminated lease; and a state court collection action against Debtor, the business, and Debtor's daughter on Apr. 21, 2009, requesting a judgment of unpaid rents since February 2009); *id.* at 5, 11, 15 (Greer State Bank listed on Debtor's Schedule F as holding a claim in the amount of $69,000, for the working capital loan; Proof of Claim No. 13 in the amount of $78,722.65; and a state court action filed on June 12, 2009, against Debtor and business seeking unpaid debt from Feb. 4, 2009).

[10] *See id.* at Exs. 5, 8 (Discover listed on Debtor's Schedule F as holding a claim in the amount of $9,000, for credit card debt; Proof of Claim No. 1 in the amount of $9,910.81, and indicating that the last payment was received on Nov. 3, 2008); *id.* at 5, 13 (Kohl's Payment Center listed on Debtor's Schedule F as holding a claim in the amount of $1,141.28, for credit card debt; Proof of Claim No. 15 filed by Chase on behalf of Kohl's for $2,430.92, and indicating that the last payment on the account opened in 2001 was on Jan. 31,

petition, her liabilities exceeded her assets.[11]   Debtor testified that her assets did not

significantly change between the time of the Transfer and the time of the petition.

18.     Several transactions have occurred since the Transfer that interfere with the

practicality of avoiding the Transfer.  Defendant and/or Greer State Bank have since altered

or renewed the debt obligations and encumbrances that existed at the time of the Transfer.

<u>DISCUSSION AND CONCLUSIONS OF LAW</u>
PROPERTY OF THE ESTATE

Section 541 defines property of the estate and specifies that it includes "all legal or

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.

§ 541(a)(1).  However, Section 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only
> legal title and not an equitable interest, such as a mortgage secured by real
> property, or an interest in such a mortgage, sold by the debtor but as to which
> the debtor retains legal title to service or supervise the servicing of such
> mortgage or interest, becomes property of the estate under subsection (a)(1)
> or (2) of this section only to the extent of the debtor's legal title to such
> property, but not to the extent of any equitable interest in such property that
> the debtor does not hold.

11 U.S.C. § 541(d).  Defendant asserts that the Property would not constitute property of

Debtor's estate had it not been transferred because Defendant was the equitable owner and

Debtor only held bare legal title by virtue of a resulting or constructive trust.

"While federal law creates the bankruptcy estate, the determination of property rights

is controlled by state law." *In re Brittain*, 435 B.R. 318, 321-22 (Bankr. D.S.C. 2010).

Under South Carolina law, a resulting trust is an equitable remedy designed "to effectuate

---

2009); *id.* at 5, 12, 16 (Greer State Bank listed on Debtor's Schedule F as holding a claim in the amount of
$14,000, for a personal loan; Proof of Claim No. 14 in the amount of $13,647.31, for the $15,000 note
executed on Mar. 25, 2008, and indicating that Debtor has been delinquent on this loan since Feb. 5, 2009; and
a state court action against Debtor filed on June 10, 2009, to collect on this consumer debt); *id.* at 5, 7 (the IRS
listed on Debtor's Schedule E has a creditor holding an unsecured priority claim for her 2007 income taxes in
the amount of $5,202; Proof of Claim No. 17 in the amount of $14,927.10, for unpaid 2002, 2006, and 2007
income taxes and associated penalties).

[11] *Id.* at Ex. 5 at 6 (indicating total assets of $487,075.02, and total liabilities of $667,925.13).

the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." *Bowen v. Bowen*, 352 S.C. 494, 499, 575 S.E.2d 553, 556 (2003) (citing *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248-49, 489 S.E.2d 472, 475 (1997)).  Generally,

> when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. The presumption, however, may be rebutted and the actual intention shown by parol evidence.

*Id.* (internal citation omitted).

"A constructive trust results when circumstances under which property was acquired make it inequitable that it be retained by the one holding legal title.  These circumstances include fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution." *Macaulay v. Wachovia Bank of S.C., N.A.*, 351 S.C. 287, 294, 569 S.E.2d 371, 375 (Ct. App. 2002) (internal quotation marks omitted).   "Fraud is an essential element, although it need not be actual fraud." *Dye v. Gainey*, 320 S.C. 65, 68, 463 S.E.2d 97, 99 (Ct. App. 1995) (citing *Lollis v. Lollis*, 291 S.C. 525, 529, 354 S.E.2d 559, 567 (1987)).

> In general, a constructive trust may be imposed when a party obtains a benefit which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty.

*Straight v. Goss*, 383 S.C. 180, 210, 678 S.E.2d 443, 459 (Ct. App. 2009) (internal quotation marks and citations omitted).   "The evidence necessary to support the imposition of a constructive trust must be clear and convincing." *McDaniel v. Kendrick*, 386 S.C. 437, 444,

688 S.E.2d 852, 856 (Ct. App. 2009) (citing *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 794 (1990)).

The evidence in this case does not support any finding of fraud, bad faith, mistake, or anything of a similar nature with regard to Debtor and Pfister's ownership of the Property prior to the Transfer. The Property was placed in and remained titled in both of their names intentionally. All parties knew that loans were made to Defendant and secured by the Property. It was no secret or mistake that Defendant paid the mortgages and improved the property. There is no justification for a resulting trust. There is also no indication that a constructive trust arose because nothing suggests that it is or was inequitable for Debtor to own her share of the Property or that an equitable obligation to make restitution exists.

## FRAUDULENT TRANSFER—11 U.S.C. § 548

Trustee asserts that the Transfer of Debtor's interest in the Property should be avoided because it was actually and constructively fraudulent pursuant to § 548(a). Under § 548(a)(1)(A), a trustee may avoid a transfer made within two years before the date of the petition if the debtor made the transfer "with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted." 11 U.S.C. § 548(a)(1)(A). A trustee may also avoid a transfer that is constructively fraudulent; that is, if the debtor "(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred . . ." 11 U.S.C. § 548(a)(1)(B).

The Court concludes that there is sufficient evidence in the record to support Trustee's claim for *constructive* fraud. All elements of § 548(a)(1)(B) are present from the facts set forth above.

8

Although various "badges of fraud"[12] exist to support Trustee's § 548(a)(1)(A) claim for *actual* fraud, the Court cannot find for the Trustee on this cause of action. "Regardless of the ability of the courts to infer actual fraudulent intent from the presence of 'badges of fraud,' actual fraudulent intent requires a subjective evaluation of the debtor's motive." *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (4th Cir. 1992). Defendant presented adequate evidence indicating that the Transfer was made for reasons other than to hinder, delay and defraud her creditors.

## 11 U.S.C. § 544 AND THE FDCPA

Trustee also seeks to avoid the Transfer as constructively and actually fraudulent by utilizing its special powers under § 544(b) in conjunction with the FDCPA. Section 544(b) provides:

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (emphasis added).

Under the FDCPA, a transfer made by the debtor is constructively fraudulent as to a debt to the United States that arose before the transfer if: "(A) the debtor makes the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and (B)

---

[12] This Court has previously recognized the "badges of fraud" to include:

> the insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.

*In re Jones*, 397 B.R. 765, 770 (Bankr. D.S.C. 2008) (quoting *Hovis v. Ducate (In re Ducate)*, 369 B.R. 251, 261 (Bankr. D.S.C. 2007)). Trustee contends that Defendant is an "insider" or "related party" of the Debtor, which results in a presumption of fraudulent intent. *See Tavenner v. Smoot*, 257 F.3d 401, 408 (4th Cir. 2001). If the debtor is an individual, the Code defines an "insider" as: "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control . . ." 11 U.S.C. § 101(31)(A). A "related party" is not defined by the Code or relevant case law.

the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer

. . .” 28 U.S.C. § 3304(a)(1).  A transfer made by the debtor is actually fraudulent under the

FDCPA “if the debtor makes the transfer . . . with actual intent to hinder, delay, or defraud a

creditor . . .” 28 U.S.C. § 3304(b)(1)(A).[13]

The Court’s analysis of § 548 above applies to Trustee’s claim arising from § 544

and the FDCPA. *Walter v. OneWest Bank (In re Walter)*, 462 B.R. 698, 706 (Bankr. N.D.

Iowa 2011) (citations omitted) (stating that courts look to cases analyzing § 548 for

guidance in conducting the FDCPA).  Because Debtor was indebted to the IRS at the time of

the Transfer, the Court finds that the Transfer is also constructively fraudulent and avoidable

pursuant to § 544(b) and 28 U.S.C. § 3304(a)(1).[14]

### 11 U.S.C. § 544 AND THE STATUTE OF ELIZABETH

Trustee asserts that the Transfer is avoidable as a fraudulent transfer under § 544(b)

and the Statute of Elizabeth.  The Statute of Elizabeth states in relevant part that:

> Every gift, . . . transfer, and conveyance of lands . . . by writing or otherwise,
> . . . which may be had or made to or for any intent or purpose to delay,
> hinder, or defraud creditors and others of their just and lawful actions, suits,
> debts, accounts, damages, penalties, and forfeitures must be deemed and
> taken . . . to be clearly and utterly void, frustrate and of no effect, any
> pretense, color, feigned consideration, expressing of use, or any other matter
> or thing to the contrary notwithstanding.

S.C. Code Ann. § 27-23-10(A).  In order for Trustee to maintain an action under § 544(b)

and the Statute of Elizabeth, “there must be a creditor with a valid unsecured claim in the

bankruptcy case who could assert a claim to avoid the transfer.” *Hovis v. Ducate (In re

Ducate)*, 369 B.R. 251, 258 (Bankr. D.S.C. 2007).

---

[13] In order to determine actual fraudulent intent under the FDCPA, the Court may consider factors set forth in
28 U.S.C. § 3304(b)(2), which are substantially similar to the “badges of fraud” recognized by this Court. *See
supra* note 12.
[14] Based on this finding, the Court does not deem it necessary to determine whether the Transfer is also
avoidable as a constructively fraudulent transfer to an insider. *See* 28 U.S.C. §3304(a)(2).

Under the Statute of Elizabeth, "an action lies for constructive fraudulent transfer if (1) debtor makes a transfer but does not receive 'valuable consideration' in return; (2) debtor was indebted to [creditor] at the time of transfer; and (3) debtor does not have sufficient property to pay his debt to [creditor] in full." *In re Southern Textile Knitters*, 65 F. App'x 426, 435 (4th Cir. 2003) (citing *Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45, 48-49 (1996)).   Under an actual fraud theory, Trustee may avoid the Transfer if he can establishes that: "(1) the transfer was made by the grantor with the actual intent of defrauding its creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee." *Campbell v. Deans (In re J.R. Deans Co.)*, 249 B.R. 121, 130 (Bankr. D.S.C. 2000) (quoting *Mathis v. Burton,* 319 S.C. 261, 460 S.E.2d 406, 408 (Ct. App. 1995)).

Pursuant to the facts and analysis stated above, the Court cannot find that the Transfer was actually fraudulent.  However, the Court concludes that it was constructively fraudulent under § 544(b) and the Statute of Elizabeth, S.C. Code Ann. § 27-23-10(A).

### RECOVERY UNDER § 550

Trustee argues that pursuant to §550(a),[15] the appropriate remedy on these facts is for the Court to enter a money judgment against Defendant for the value of the Property at the time of the Transfer, rather than simply avoiding the Transfer.   The Fourth Circuit has previously interpreted the language of § 550(a) to evidence "a congressional intent to return the property transferred unless to do so would be inequitable." *In re Broumas*, 135 F.3d 769, at *6 (4th Cir. 1998) (unpublished table decision) (quotation marks and citations omitted).

---

[15] "[T]o the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . ." 11 U.S.C. §550(a).

Trustee has presented evidence of post-Transfer transactions that would complicate any recovery for the estate should his recovery be limited to avoidance of the Transfer.

If Debtor's interest in the Property had not been transferred, it would have been available to Trustee for liquidation and distribution to creditors. Comparing valuations to encumbrances, it appears on paper that there was equity in the whole Property of as much as $166,000 to $200,000 at the time of the Transfer. However, Debtor owned only a one-half undivided interest. The Court cannot simply assume that dividing the equity at the time of the Transfer in half results in a number that is equal to the value of the interest transferred.

Looking to the record before the Court, the best evidence of the value of Debtor's transferred interest comes from the facts as they existed on December 28, 2008. On that date, Greer State Bank agreed to loan $87,000 to Defendant with the Property as security. The evidence indicates that no funds would have been loaned without a lien on the Property. In fact, the bank would not close the loan until the paperwork error was corrected or the Property was transferred to conform to the prepared paperwork. Debtor and Pfister voluntarily transferred their interests in the Property at that time. As a result, Defendant received the $87,000 loan. It therefore appears that Pfister's and Debtor's combined interests in the Property were worth at least $87,000 at the time of the Transfer. As a result, the Court finds that it is more likely than not that the Transfer depleted Debtor's bankruptcy estate by at least $43,500.

**IT IS THEREFORE ORDERED** that the December 31, 2008, transfer of Debtor Patricia S. Pfister's interest in the property located at 3098 Highway 101 South, Greer, South Carolina to Defendant Architectural Glass Construction, Inc. was constructively

fraudulent and is avoidable pursuant to § 548(a)(1)(B) and § 544(b) with 28 U.S.C. § 3304(a)(1) and with S.C. Code Ann. § 27-23-10(A).

**IT IS FURTHER ORDERED** that as a result of this transfer, and pursuant to § 550(a)(1), Trustee Robert F. Anderson is entitled to a judgment against Defendant Architectural Glass Construction, Inc. in the amount of $43,500.

**AND IT IS SO ORDERED.**